Elmer Joseph **SCHARFENBERGER,**
**Plaintiff,**

**v.**

Charles J. **HOLMES,** Commissioner, Bureau of Corrections, et al.,
**Defendants.**

**No. 7583-B.**

United States District Court,
W. D. Kentucky,
Louisville Division.

Nov. 13, 1974.

---

John Allen Taylor, Louisville, Ky., for plaintiff.

Robert L. Chenowith, Asst. Atty. Gen., James M. Baker, Gen. Counsel, Dept. of Justice, Bruce K. Davis, Bureau of Corrections, Frankfort, Ky., for defendants.

## MEMORANDUM; ORDER

BRATCHER, District Judge.

This 1983 action for damages is now before the Court on defendants' motions for judgment n. o. v. and, alternatively, on motions for a new trial pursuant to Rule 50(b) of the Federal Rules of Civil

Procedure. Briefs in support of the respective positions of the parties have been submitted on the question of whether or not the verdict returned by the jury awarding plaintiff $15,000.00 against each of the defendants Wingo and Wilson should be set aside by the Court. Motions for directed verdicts by each defendant were timely made and denied by the Court, thus preserving their right to seek post-trial relief.

The factual background of this case is as follows: Plaintiff, Elmer Joseph Scharfenberger, while an inmate at Eddyville State Penitentiary, acquired a quantity of drug known as tetracycline from an inmate friend who worked in the prison pharmacy, and injected this drug into his right arm. This injection was not authorized, prescribed or administered by any medical personnel. According to the testimony of two treating physicians, Drs. Talley and Reeder, plaintiff told them he injected himself with this drug on February 20, 1972.

Soon after the injection, plaintiff's arm began to ache and became numb. Treatment was commenced in the prison infirmary by the late Dr. Max Salb, the prison physician. Subsequently, gangrene developed and it became necessary to amputate plaintiff's arm.

From a great number of allegations and voluminous discovery, the issues were narrowed and an agreed order entered into by the parties through their respective counsel on February 28, 1974, limiting proof at trial to the following questions:

(a) Whether the plaintiff's injury could have been treated successfully and whether said treatment would have reasonably been anticipated to save his arm or any part thereof.

(b) Whether the attending physician made any recommendations for treatment of plaintiff's injury or any recommendations which could reasonably be anticipated to have led to treatment of his injury, any of which any of the joint defendants failed to follow, or, in fact, denied.

(c) Whether any decisions made by any of the joint defendants pertaining to recommendations made by the attending physician resulted in the loss of plaintiff's arm or any part thereof.

These issues were further refined and solidified into two controlling questions as the case went to trial, to-wit:

(1) Whether any physician made recommendations or requests to the prison officials concerning plaintiff's treatment which were refused or disregarded; and

(2) Whether such refusal, if it in fact occurred, resulted in a residual injury to plaintiff which could have been prevented or lessened by more timely attention.

These issues were tried before a jury and the verdict was returned in favor of plaintiff. Now before the Court is defendants' motions to set aside this verdict.

It is clearly within the power of the Court to set aside a jury verdict which is contrary to the clear weight of the evidence. This power is not diminished even in those instances when sufficient evidence exists to preclude a summary judgment or directed verdict. The Court always has a duty to make a final determination, on proper motion, after the evidence is heard and the verdict of the jury returned, whether there has been a miscarriage of justice. See Atlantic and Pacific Stores, Inc. v. Pitts, 283 F.2d 756 (4th Cir., 1960); Hartman v. White Motor Co., 12 F.R.D. 328 (D.C.Mich., 1952). Also within the discretion of the Court is the power to set aside a verdict which is supported by substantial evidence, if in the Court's opinion that verdict is contrary to the clear weight of the evidence in the case. See Hawkins v. Sims, 137 F.2d 66 (4th Cir., 1943); Gaynor v. Atlantic Greyhound Corp., 86 F.Supp. 284 (D.C. Pa., 1949). This Court must, therefore, consider defendants' motions in view of the evidence, keeping in mind that a jury verdict is not to be treated lightly and should be set aside only in those instances when it is contrary to the clear weight of the evidence. In Simblest v

Maynard, 427 F.2d 1 (2nd Cir., 1970), the Court said, "On a motion for judgment n. o. v., the evidence must be viewed in the light most favorable to the party against whom the motion is made and he must be given the benefit of all reasonable inferences which may be drawn in his favor from that evidence". However, the federal standard requires consideration of "all [of] the evidence—not just that which supports the non-mover's case". Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir., 1969). This Court must, therefore, view all the evidence, give plaintiff every reasonable doubt, and decide, consonant with these standards, whether the weight is sufficient to sustain the verdict of the jury.

With these standards clearly in mind, it is now appropriate to review the pertinent evidence presented at trial.

■ As was previously stated, treatment was begun in the prison medical facility by Dr. Salb soon after plaintiff's injury and continued there until his removal to the outside facility. It is plaintiff's position that this treatment was insufficient and that his removal was refused or delayed by prison officials contrary to the advice of the treating physician. To support this contention, plaintiff offered into evidence a document designated as an "admission note", purportedly prepared by Dr. Salb. The importance of this document to plaintiff's case cannot be overstated. Its contents form practically the only support for plaintiff's allegations that defendants had been medically advised that plaintiff's condition was serious and that an urgent need existed for his removal to an outside medical facility. This document, however, is of highly questionable authenticity. On its face, alterations of material dates are clearly evident; and in parts of the document, dates are actually omitted. The sentence on which plaintiff relies for his allegation of knowledge on the part of the defendants is not dated, and ascertaining when it was written or to what date it refers seems impossible. This sentence reads as follows:

"At one thirty I notified the warden that the man should be sent to another hospital because we were not equipped to remove his hand or arm."

As is readily apparent, its plain meaning, either express or implied, does not suggest a sense of urgency. Further, neither this statement nor the document is signed by its alleged author, the late Dr. Salb. From this statement standing alone, the jury could not reasonably conclude that defendants refused or delayed in granting their approval for plaintiff's transfer to the outside medical facility.

Dr. Nathaniel Talley, the physician who performed the amputation, testified that his first information from Dr. Salb regarding the plaintiff came on February 29, 1972, through a telephone call. In a portion of the "admission note", which does refer to a date, however, there appears the following statement:

"I called Dr. Talley 2–25–72 about this man and he said he would see him immediately."

Thus, a patent inconsistency exists between the "admission note" and Dr. Talley's testimony. Dr. Talley further testified that Dr. Salb suggested that amputation *might be necessary* and that he (Dr. Talley) agreed to see the plaintiff that day. On March 1, the day after Dr. Talley testified that he received Dr. Salb's first communication regarding plaintiff, he amputated plaintiff's arm.

It is clear from Dr. Talley's testimony that Dr. Salb was uncertain about the necessity for amputation when he called and that he believed he was following correct medical procedure. All of the foregoing is consistent with defendants' contention that they had no advance medical advice of plaintiff's possible need for removal to the outside hospital before the actual day of his removal. On that day they acted promptly and in a manner which indicated a proper concern for plaintiff.

The testimony of Ben Maples, an inmate, adds little to plaintiff's case. He

testified that on or about February 24, 1972, he requested of defendant Wingo that plaintiff be transferred to an outside medical facility for treatment. Even if this testimony is accepted at face value, it does not impute to defendant Wingo a refusal of some medical recommendation since Maples is not a physician.

The second and only remaining issue in the case was whether or not timely medical attention could have saved any part or portion of plaintiff's arm. Depositions were taken of four physicians who treated plaintiff either after the first or second amputation. These depositions were read to the jury. The questions propounded to these physicians regarding the timeliness of treatment and the effect of a possible delay were hypothetical due to an absence of certain factual information regarding the nature of the injury. Throughout this testimony, however, is the overwhelming, preponderant, expert opinion that within a very short time after the event, the pathological process which resulted in gangrene became irreversible and amputation was inevitable. Further, the testimony regarding the second amputation is to the effect that it became necessary because the first surgery was conservatively undertaken in the hopes of saving plaintiff's elbow, and not from inattention or delay. The second effort was undertaken due to the failure of the conservative surgical procedure.

The cases in this area clearly define what elements must be present to justify an award of damages. In Stiltner v. Rhay, 371 F.2d 420 (9th Cir., 1967), the Court, in footnote No. 3, set forth four factors which must be proved to entitle plaintiff to relief. These are: (1) acute physical condition; (2) the urgent need for medical care; (3) the failure or refusal to provide it; (4) tangible residual injury. This test was adopted in Schmidt v. Wingo, 368 F.Supp. 727 (W.D.Ky., 1973), and enlarged upon with the following language, " . . . plaintiff must show by a preponderance of the proof a deliberate refusal to follow the recommendation of Dr. Salb".

The Sixth Circuit, in affirming Schmidt v. Wingo, 499 F.2d 70 (6th Cir., 1974), softened the "deliberate refusal" test stating that, "(it) . . . is not the only ground for holding him liable under the Civil Rights Act". The Sixth Circuit, in Schmidt v. Wingo, supra, reaffirmed the proposition that prison authorities have wide discretion in the medical treatment of prisoners.

Finally, in Church v. Hegstrom, 416 F.2d 449 (2nd Cir., 1969), an action brought under 42 U.S.C. § 1983 against four officials of the Connecticut State Jail for damages for the alleged failure to furnish needed medical care, the Court dealt extensively with what a plaintiff in an action of this type must prove. The Court suggested that an action of this type need not rise to the level of specific intent to harm, or willfulness, but that federal courts are not authorized to interfere in medical practices or other matters of internal discipline of state prisons; that to be actionable, the conduct of prison officials must be "barbarous" or "shocking to the conscience". The Court also noted that it is inconceivable that a claim of negligence could give rise to a recovery for violation of a constitutionally protected right.

The common denominator of the authorities and their applicability to the instant case is clear. There must have been a knowing failure or refusal to provide urgently needed medical care, the consummate effect of which caused a residual injury which could have been prevented with timely attention. To this criteria must be added the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures, and the absolute bar to basing any Section 1983 case on negligence.

It is clear that the evidence presented by plaintiff which attempted to show a knowing or intentional disregard by the defendants of the directions of the medical authorities and a residual injury as a result of some delay is insubstantial and could not warrant a finding by the jury for plaintiff on this point. The verdict simply was not

supported by substantial credible evidence as is required. Carruba v. Transit Casualty Co., 443 F.2d 260 (6th Cir., 1971).

Inasmuch as it is the Court's view that there was but one reasonable conclusion to be drawn from the proof presented at trial, the holding herein is not at odds with Reeves v. Power Tools, Inc., 474 F.2d 375 (6th Cir., 1973), which directs that such a motion be granted very cautiously.

Throughout the trial of this case, counsel for plaintiff persisted in asking questions which sounded distinctly in negligence, and on occasion improper statements were made to the jury. Though objections were made by defendants and sustained by the Court, and the jury admonished and instructed by the Court to consider only the permissible proof, it appears that the jury was nevertheless influenced.

It is the duty of this Court not to allow a verdict to stand which is against the great weight of the evidence in the case, a verdict which a reasonable jury could not have reached.

Accordingly, it is ordered and adjudged that judgment notwithstanding the verdict be and is hereby entered in favor of defendants.