Rosemary **DOYLE**, Administrator of the Estate of Mary Ann Hawken, Deceased, and Barbara Hawken, as next of kin of Mary Ann Hawken, Plaintiffs,

v.

**UNICARE HEALTH SERVICES, INC., AURORA CENTER, et al.,** Defendants.

No. 74 C 828.

United States District Court, N. D. Illinois, E. D.

March 31, 1975.

---

Patrick A. Keenan, DePaul Law Clinic, Chicago, Ill., for plaintiffs.

John W. Dondanville, Baker & McKenzie, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

The named plaintiffs, Rosemary Doyle, as Administrator for the estate of Mary Ann Hawken, deceased, and Barbara Hawken, as sister and next friend of Mary Ann Hawken, bring this action against Unicare Health Services, Inc. (Unicare), and various of its directors and employees, for alleged violations of Mary Ann Hawken's civil rights, 42 U.S. C. §§ 1983, 1985(3) and 1986.

Unicare, a privately owned, for profit, health care facility, licensed by the State of Illinois, contracted to provide full-time supervision and care to Mary Ann Hawken, a mentally retarded adult. Asserting that the defendants breached their obligation to Mary Ann Hawken by denying her necessary medical attention, thereby contributing to her death, the plaintiffs now seek monetary damages in the amount of $1,000,000. Federal jurisdiction is founded upon 28 U.S.C. § 1343. Plaintiffs also join two pendent claims, one sounding in tort for alleged malpractice, and the second, for breach of contract for failure to provide the decedent with promised programs, services, and treatment.

Defendants move to dismiss these claims charging (1) lack of jurisdiction, and (2) failure to state a valid cause of action. For the reasons set forth hereinafter, the defendants' motions will be granted.

The plaintiffs' factual allegations reflect that, on February 1, 1971, they entered into a written agreement with Unicare, whereby it would provide full-time care and treatment for Mary Ann Hawken's physical and emotional needs. Pursuant to this agreement, the defendants allegedly received payments from the deceased, her relatives, the Social Security Administration, and the State of Illinois.

On May 18, 1973, Mary Ann Hawken allegedly fell and injured her head. Defendants took Ms. Hawken to the Mercy

Center for Health Care Services located in North Aurora, Illinois, where her head wound was treated and sutured. Upon return to the Aurora Center, she apparently became weak, nauseated, and complained to defendants that she was suffering increased discomfort and pain. After several unanswered entreaties for help, the deceased allegedly suffered a seizure. The defendants allegedly still refused to administer any medicine, call a doctor, or return Mary Ann to the hospital. On May 20, 1973, having received no further treatment, Mary Ann Hawken died at the Aurora Center. The plaintiffs claim that Mary Ann's death was directly and proximately caused by defendants' reckless and intentional disregard for her condition, their intentional refusal to give her necessary treatment, and their refusal to obey and comply with the laws and regulations promulgated by the State of Illinois which define the standards for medical treatment required for residents of a sheltered care facility.

### PLAINTIFFS' § 1983 CLAIM

The defendants raise two challenges to the plaintiffs' § 1983 claim; first, that the conduct described in plaintiffs' complaint does not give rise to a valid claim of deprivation of any rights, privileges, or immunities as contemplated by the Civil Rights Act, and second, that Unicare was not acting under the color of state law, and therefore is not subject to suit under § 1983.

Regarding the first challenge, the courts have generally recognized that custodial institutions under the aegis of the State have a constitutional obligation to ensure that an inmate is secure in his life and person while confined there. *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974); see also, *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). This has been interpreted to require these institutions to provide necessary and reasonable medical treatment to those entrusted to their care.

*Thomas v. Pate*, 493 F.2d 151 (7th Cir. 1974); Accord, *La Batt v. Twomey*, 513 F.2d 641 (7th Cir. 1974).

The institution's duty, however, is tempered, or conditioned, by its broad discretion in determining the nature and extent of medical treatment to be afforded its residents. The courts have refused to entertain § 1983 lawsuits where the plaintiff merely charges dissatisfaction with the adequacy of the treatment received, *Thomas, supra,* or that it was administered negligently. *Scharfenberger v. Holmes*, 384 F.Supp. 1269 (W.D.Ky.1974). The courts have carefully avoided second-guessing licensed physicians as to the propriety of their prescribed treatment.

As expressed in *Thomas, supra,* 493 F.2d at 158, however, in the prison context:

. . . a claim of medical mistreatment rises to fourteenth amendment proportions when it asserts a refusal to provide essential medical care after a prisoner brings his medical complaint to the attention of prison authorities. . . . In the ultimate determination whether medical care was in fact essential, the question would be, we think, whether it had been proved that a physician exercising ordinary skill and care at the time of the request for medical care would have concluded that the symptoms of the prisoner evidenced a serious disease or injury; that the potential for harm by reason of delay or denial of medical care was substantial; and that such harm did result. In deciding at the pleading stage whether a claim has been stated, the court must consider whether the factual allegations of the complaint suggests the presence of these factors. [citations omitted]

We also think that it is sufficient to allege facts which suggest that the medical care provided is so clearly inadequate as to amount to a refusal to provide essential care or is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously ag-

gravate the prisoner's condition. [citations omitted]

If the defendants were acting under "color of state law," as required for jurisdiction under § 1983 at the time in question, the plaintiffs' complaint states a valid cause of action for refusal to supply essential medical treatment.

 Accepting plaintiffs' factual allegations as true, they set forth that (1) the deceased was a mentally retarded adult entrusted to the defendants' care, (2) she received a head injury sufficient to require emergency treatment, (3) after receiving initial treatment she experienced additional pain and discomfort which she brought to the attention of the defendants without recourse, (4) she then suffered a seizure which defendants knew about and still refused additional treatment, and (5) she ultimately died without receiving any further treatment. Based upon these allegations, the plaintiffs contend that defendants, although aware of Mary Ann Hawken's deteriorating physical condition, knowingly, willfully, and wantonly refused to procure readily available medical treatment which would have saved Mary Ann Hawken's life, in violation of their contractural, moral, and legal duty to aid her. Such a claim clearly states a cause of action under the Fourteenth Amendment, for depriving Mary Ann Hawken of her fundamental right to the enjoyment of life. See, *Spence v. Staras, supra.*

 The Civil Rights Act, however, was not intended to reach all tortious interferences with the rights of others. To be actionable under § 1983, the plaintiffs must establish that the defendant Unicare, a private for-profit institution, was acting under color of state law. The plaintiffs, relying principally upon this court's decision in *Holmes v. Silver Cross Hospital of Joliet, Illinois,* 340 F. Supp. 125 (N.D.Ill.1972), argue that there is a sufficient element of state action present here because (1) the defendant North Aurora Center is licensed and pervasively regulated in all phases of

its activities by the Illinois Department of Public Health; (2) it is regularly inspected by and forced to comply with the orders of four governmental agencies; (3) it is financed in large part by public tax dollars; and (4) it operates merely as an extension of the Illinois Department of Mental Health in that the majority of its residents are admitted directly from departmental institutions.

In support of these incidents of state involvement, the plaintiffs have offered considerable material which arguably establishes that the defendant is subject to pervasive regulation, benefits substantially from governmental subsidies, and provides services which supplement the State's mental health system. Even accepting the existence of these criteria, in the face of emerging decisional law running *contra* to *Holmes,* and seriously eroding its precedential effect, we find that the plaintiffs have failed to establish jurisdiction over the defendants.

 As recently set forth by the Supreme Court in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), on the question of § 1983's coverage of a public utility, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. *Moose Lodge No. 107 v. Irvis, supra,* 407 U.S. 163 at 176–177, 92 S.Ct. 1965, at 1973, 32 L.Ed.2d 627. Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so." Consistent with this ruling and pertinent to the instant suit, numerous cases have held that being subject to state regulation and receiving Hill-Burton funds, do not convert an otherwise private hospital into one acting under color of state law. *Ward v. St. Anthony Hosp.,* 476 F.2d 671 (10th Cir. 1973); *Jackson v. Norton-Children's Hospitals, Inc.,* 487 F.2d 502 (6th Cir. 1973); *Barrio v. McDonough District Hosp.,* 377 F.Supp 317 (S.D.Ill.1974); *Mulvihill v. Julia L. Butterfield Memorial Hosp.,* 329 F.Supp. 1020 (S.D.N.Y.1971);

*Barrett v. United Hosp.*, 376 F.Supp. 791 (S.D.N.Y.1974); *Slavcoff v. Harrisburg Polyclinic Hosp.*, 375 F.Supp. 999 (M.D. Pa.1974). Nor does a hospital lose its private character because it receives funds from the state for the care of indigent patients, *Shulman v. Washington Hosp. Center*, 222 F.Supp. 59 (D.D.C. 1963); *Halbertstadt v. Kissane*, 31 A.D. 2d 568, 294 N.Y.S. 841 (1968); *West Coast Hospital Ass'n. v. Hoare*, 64 So.2d 293 (Fla.1953); or funds through Medicare or Medicaid programs, *Ward v. St. Anthony Hosp., supra,* 476 F.2d at 675–676; *Slavcoff v. Harrisburg Polyclinic Hosp., supra,* 375 F.Supp. at 1003–1004; or other governmental financial assistance, *Mauer v. Highland Park Hosp. Foundation,* 90 Ill.App.2d 409, 232 N.E. 2d 776 (1967).

▪ Nor does the fact that the defendants' services may be "affected with a public interest" give rise to state action. As expressed in *Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 354, 95 S.Ct. at 455. "Doctors, optometrists, lawyers, Metropolitan, and Nebbia's upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services 'affected with a public interest.' We do not believe that such a status converts their every action, absent more, into that of the State."

▪ In order to establish state action for purposes of the Fourteenth Amendment, the kind of symbiotic relationship between the private party and the State is required in which the State has so far insinuated itself into a position of interdependence that is a joint participant in the enterprise. Jackson at 357, 95 S.Ct. at 457, citing *Burton v. Wilmington Parking Authority,* 365 U.S. 715 at 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In other words, "the inquiry must be whether there is sufficiently close nexus between the State and the challanged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson, supra,* 419 U.S. at 351, 95 S.Ct. at 453.

The Seventh Circuit has recently held, *Doe v. Bellin Memorial Hosp.,* 479 F.2d 756 at 761 (7th Cir. 1973), in passing on whether an action could be maintained under § 1983 to enjoin a private hospital receiving federal subsidies from denying abortions, that:

> Unlike the fact situation in *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), on which plaintiffs place heavy reliance, this record does not reflect any governmental involvement in the very activity which is being challenged. We find no basis for concluding that by accepting Hill-Burton funds the hospital unwittingly surrendered the right it otherwise possessed to determine whether it would accept abortion patients.

This more direct participation rule has been applied by other circuits. Judge Friendly, for instance, observed in *Powe v. Miles,* 407 F.2d 73 at 81 (2d Cir. 1968):

> . . . [t]he state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint.

Likewise, the Tenth Circuit required a "causal connection between the state conduct and plaintiff's injury," in *Ward v. St. Anthony Hosp., supra,* 476 F.2d at 676. In *Slavcoff v. Harrisburg Polyclinic Hosp., supra,* 375 F.Supp. at 1001, the court found that the "state must be intertwined in the very activity which caused plaintiff's injury."

▪ Applying the standard reflected by the aforementioned cases, we do not find that the plaintiffs have alleged the requisite involvement by the state in the wrongful conduct at issue here. Regardless of the extent to which the defendants receive governmental support, or the degree of government regulation, unless the state activity or involve-

ment related to the conduct which caused Mary Ann Hawken's death, the instant cause of action is not actionable under § 1983. Since there is no allegation that the state, either through neglect or purposeful failure to properly regulate the defendant, sanctioned or gave tacit approval to the defendants' course of conduct, the defendants cannot be subject to federal jurisdiction. This of course does not preclude the plaintiffs from bringing an action in state court for alleged constitutional deprivations, or for their pendent claims based upon contract or tort. It does, however, require dismissal of plaintiffs' § 1983 claim here.

## PLAINTIFFS' 1985(3) CON-SPIRATORIAL CLAIM

Plaintiffs further contend that the defendants conspired to violate state laws and regulations, which caused permanent, irreparable, and fatal injury to Mary Ann Hawken, thereby depriving her of her constitutional rights to due process and equal protection. The Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), did extend § 1985(3) to certain private conspiracies. It limited such coverage, however, by admonishing that, when faced with private conspiratorial deprivations, "the constitutional shoals that would lie in the path of interpreting § 1985(3) as a general tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment." *Supra* at 102, 91 S.Ct. at 1798. The Court concluded the "[t]he language [of § 1985 (3)] requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Supra* at 102, 91 S.Ct. at 1798.

 The courts have generally interpreted "class-based invidious dis-

crimination" to be the "kind of irrational and odious class discrimination akin to racial bias—such as discrimination based upon national origin or religion." *Arnold v. Tiffany*, 487 F.2d 216 at 217 (9th Cir. 1973). The plaintiffs have nowhere alleged that Mary Ann Hawken was a member of any such class, or that she was discriminated against on the basis of her membership therein. The failure to show class-based discrimination precludes entertaining this action under § 1985(3) in the posture of a private conspiracy.

In the absence of an allegation charging invidious discrimination, the Seventh Circuit has ruled that where, as here, the plaintiff is seeking to enforce rights protected under the Fourteenth Amendment, there must be an element of state involvement. *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1973). The Seventh Circuit observed that *Griffin* only extended the scope of 1985(3) to those private conspiracies involving either violations of the Thirteenth Amendment or of the plaintiff's right to travel interstate. Since *Griffin* did not address the question of purely private conspiracies designed to deprive a person of his Fourteenth Amendment rights, the court concluded that such conduct was not actionable under § 1985(3). Rather, it concluded that the right secured by the Fourteenth Amendment is a right to protection against unequal treatment by a state and, therefore, absent an element of state action or conduct under color of state law, any such § 1985(3) claim is not actionable. Since we have already determined that the defendants were not acting under color of state law, plaintiffs' § 1985(3) claim must also be dismissed for lack of jurisdiction.

## PLAINTIFFS' § 1986 CLAIM

 Section 1986, which provides that every person having knowledge that certain wrongs conspired to be done or about to be done, and having the power to prevent their commission neglects or refuses to do so, shall be liable to the

party injured, is totally dependent upon § 1985 for vitality. No claim may lie under § 1986 unless a valid claim setting forth a conspiracy to deprive a person of his civil rights has first been established under section 1985. *Johnston v. National Broadcasting Co., Inc.*, 356 F. Supp. 904 (S.D.N.Y.1973); *Huey v. Barloga*, 277 F.Supp. 864 (N.D.Ill.1967). Since, as enumerated above, we find that the plaintiffs have not alleged a conspiracy actionable under § 1985, this claim must also be dismissed.

■ Finally, since the plaintiffs' pendent state claims are totally dependent upon the federal causes of action, all of which will be dismissed for lack of jurisdiction, they, too, must be dismissed. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965).

An appropriate order will therefore enter dismissing plaintiffs' entire complaint, without prejudice.