Joseph L. GERMAN, Plaintiff,

v.

James R. KILLEEN, Wayne County Clerk, Joan M. Petitpren, Chairman, Wayne County Civil Service Commission, Henry R. Kozak, Vice–Chairman, Wayne County Civil Service Commission, Henry Majors, Wayne County Civil Service Commission, Richard G. Behler, Personnel Director and Secretary to the Commission, Helen Morgan, Assistant Personnel Director and Secretary to the Commission, Orville Tungate, Chief Deputy County Clerk, Defendants.

Civ. No. 78–70217.

United States District Court, E. D. Michigan, S. D.

Aug. 25, 1980.

---

Ruth B. Acevedo, Detroit, Mich., for plaintiff.

William B. McIntyre, Jr., Asst. Corp. Counsel, Detroit, Mich., for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND DENYING DEFENDANTS' MOTION TO DISMISS IN PART

COHN, District Judge.

### I.

Before the Court are defendants' (with the exception of defendant Killeen) motions

to dismiss plaintiff's Second Amended Complaint on the grounds that plaintiff has failed to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6).[1]

Defendants claim plaintiff's allegations are insufficient to state a claim under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986, and they are immune from suit.

Jurisdiction is based on 28 U.S.C. § 1331 (original jurisdiction in matters involving a federal question), and 28 U.S.C. § 1343 (original jurisdiction for civil rights claims).

For the reasons stated, defendants' motions are granted in part.

## II.

Plaintiff, a deputy court clerk for Wayne County, Michigan, was the subject of a 1975 grand jury investigation regarding alteration of court records. At the suggestion of defendant Killeen, plaintiff's superior and the appointing authority for plaintiff's position of deputy court clerk, plaintiff, in June 1975, went on a leave of absence pending the investigation and received vacation pay for the period rather than regular salary. After six weeks, plaintiff resumed his regular employment.

As a result of the grand jury investigation, plaintiff was charged on July 5, 1977 in a criminal complaint in the Recorder's Court for the City of Detroit with forgery and obstruction of justice. The charges alleged the false time–stamping of court papers which materially affected the course of a lawsuit.

Defendant Killeen immediately thereafter served plaintiff with an order of suspension for the period July 5, 1977 to October 4, 1977 without pay or benefits. Plaintiff appealed the suspension to the Wayne County Civil Service Commission (the Commission) which upheld the suspension. Plaintiff then filed a motion for writ of superintending control in the Wayne County Circuit

Court which remanded the matter to the Commission. After a hearing, the Commission again affirmed the suspension. A grievance was filed by plaintiff's union representative but was later withdrawn.

A second order of suspension was issued on September 12, 1977 by defendant Killeen for the period October 5, 1977 to January 2, 1978. Plaintiff appealed this suspension by application for a writ of mandamus to the Wayne County Circuit Court, which denied the writ on the ground defendant Killeen had continuing authority to suspend so long as the subject of the suspension was an employee charged with a felony or misdemeanor involving moral turpitude. The Michigan Court of Appeals affirmed the denial, *German v. Killeen*, No. 77–4266 (Mich.App. July 20, 1978), and the Michigan Supreme Court denied leave to appeal. *German v. Wayne County Clerk*, 404 Mich. 811 (1978).

A third order of suspension was issued on December 27, 1977 by defendant Tungate, the Chief Deputy Court Clerk, for the period January 3, 1978 to April 2, 1978. No appeal was taken from this suspension.

A fourth order of suspension was issued on April 3, 1978 by defendant Tungate for the period April 3, 1978 to July 3, 1978. This suspension was cut short, however, when, on May 17, 1978, plaintiff was found not guilty in the Recorder's Court. Plaintiff was subsequently reinstated. The suspensions were thereafter withdrawn and compensation and benefits due plaintiff for the time he was under suspension were paid or credited.[2]

## III.

As a result of the suspensions plaintiff filed suit[3] against defendants Killeen and Tungate, his superiors; Joan M. Petitpren, Henry R. Kozak and Henry Majors, members of the Commission; Richard G. Behler,

---

1. Defendant Killeen's motion to dismiss was denied on February 2, 1979.

2. A representation to this effect has been made to the Court by defendants' counsel. Plaintiff apparently does not dispute it.

3. Plaintiff initially filed suit on January 31, 1978. The first amended complaint was filed on April 21, 1978 and the second amended complaint was filed on July 31, 1978.

secretary and personnel director of the Commission; and Helen R. Morgan, secretary and assistant personnel director of the Commission. Plaintiff, in his Second Amended Complaint, alleges:

1) Defendants violated 42 U.S.C. § 1981 [4] by depriving him of contractual rights arising from his employment, of the full and equal benefits of procedural rights stemming from his civil service status and for subjecting him to pain, penalties and exactions not provided for by the civil service rules and regulations and not imposed on white employees;

2) Defendants violated 42 U.S.C. § 1983 [5] by depriving him of rights, privileges and immunities secured by the 4th, 5th and 14th amendments to the Constitution of the United States;

3) Defendants Morgan and Tungate violated 42 U.S.C. § 1985(3) [6] by depriving him of privileges and immunities under the Constitution and of equal protection of the law; and

4) Defendants Morgan, Behler, Petitpren, Majors and Kozak violated 42 U.S.C. § 1986 [7] by conspiring not to prevent the alleged wrongful conduct toward him despite their power to do so.

These allegations are based on the claim that defendants' actions were outside their authority and contravened the rules and regulations of the Commission. Specifically included in the allegations are the wrongful suspension of plaintiff; the refusal to reimburse plaintiff for back salary and benefits; the failure of the Commission to promulgate, review and revise the civil service rules and regulations; and the libel and/or slander of plaintiff in connection with the criminal charges that were pending against him. Alternatively, plaintiff claims that even if these actions were within defendants' authority, the rules and regulations of the Commission are violative of his rights, privileges and immunities under the constitutions and statutes of the United States and of the State of Michigan.

Defendants, in their motions, say:

1) Plaintiff's allegations are insufficient to establish a claim under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986;

2) Defendants are each clothed with various degrees of immunity against the wrongful acts complained of;

---

**4.** 42 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

**5.** 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**6.** 42 U.S.C. § 1985(3) provides in pertinent part:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

**7.** 42 U.S.C. § 1986 provides in pertinent part:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . .."

3) Some of the defendants simply had no power to perform the acts plaintiff complains of while other defendants performed those acts totally within the parameter of their official offices; and

4) Any claim on the suspension of September 12, 1977 is barred by res judicata and/or collateral estoppel, its legality having already been litigated before the Wayne County Circuit Court, the Michigan Court of Appeals and the Supreme Court of Michigan.

### IV.

#### A.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the allegations of the complaint. *Elliot Co., Inc. v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176 (6th Cir. 1975). Thus the Court must determine whether, in a light most favorable to plaintiff assuming the allegations true, the complaint, liberally construed, states a valid claim for relief. 5 Wright & Miller, *Federal Practice and Procedure* 601 (1969).

> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ The complaint must set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. Fed.R. Civ.P. 8; *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Conclusory allegations, however, should be avoided, especially when no facts are alleged to support the conclusions or when

the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.*, 386 F.Supp. 255 (E.D.Mich.1974).

#### B.

Plaintiff initially charges defendants with violating 42 U.S.C. § 1981 claiming a deprivation of his contractual rights stemming from his employment, of the full and equal benefit of procedural rights stemming from his civil service status and for subjecting him to punishment, pain, penalties and exactions not provided for by civil service rules and regulations and not imposed on white employees.

Section 1981, originally enacted as part of the Civil Rights Act of 1866,[8] was intended to uproot the institution of slavery and to eradicate its badges and incidents.[9] *Winston v. Lear–Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977). It protects against discrimination based on race or alienage by providing all persons with the same right to make and enforce contracts as enjoyed by white citizens. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

■ To invoke the protection of § 1981, plaintiff must establish that defendants placed more stringent requirements on him because of his race; or that he was unable to make or enforce a contract that a white person could make or enforce; or that he was suspended because of dissimilar treatment caused in part by his race. *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974). Plaintiff must show that ". . . his employment terms vary from those which his employer accords to similarly situated white workers." *Id.* at 505. These allegations should be supported by reference to specific acts, practices or policies which resulted in the discrimination complained of.[10] *United*

---

**8.** Act of April 9, 1866, ch. 31, § 1, 14 Stat. 27.

**9.** The legislative history of § 1981 indicates an intent to prevent the most egregious forms of conduct by whites reacting to the recent emancipation of the southern slaves. Cong.Globe, 36th Cong., 1st Sess. 339–517 (1866).

**10.** There is some authority to suggest that a plaintiff must also prove discriminatory intent when alleging a violation of § 1981, much the same way intent is needed to prove a violation of the equal protection clause of the Fourteenth Amendment. *See, City of Milwaukee v. Saxbe*, 546 F.2d 693 (7th Cir. 1976); *Guardians Ass'n. v. Civil Service Comm'n.*, 431 F.Supp. 526 (S.D.

*Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844 (4th Cir. 1979).

■ Plaintiff, in his Second Amended Complaint, alleges that he was charged with a felony; that he was subsequently suspended from his job; and that he is a black man. These allegations, considered liberally as required by Fed.R.Civ.P. 8(f), fail to satisfy the requirements for a § 1981 cause of action. There is no claim, nor are there facts alleged from which to infer, that similarly situated white employees were treated differently than plaintiff; that plaintiff was prevented from making or enforcing a contract a white person was allowed to make or enforce; or that plaintiff's employment terms varied from those accorded white workers. While plaintiff does claim to have suffered punishment, pains, penalties and exactions not imposed on white employees, there is nothing alleged in support to show how or to what extent this occurred. In other words, there is nothing alleged to allow the Court to find that plaintiff can prove any set of facts in support of his claim to entitle him to relief. Defendants' § 1981 violation is stated as a mere conclusion of law.

### C.

■ Plaintiff's claim under 42 U.S.C. § 1983 suffers from the same deficiencies. Section 1983 affords protection against violation of any rights, privileges or immunities secured by the Constitution and laws of the United States by a person acting under color of state law. To establish a claim under § 1983 plaintiff must allege and prove that defendants acted under color of state or local law, *Flagg Bros., Inc. v.*

*Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); that plaintiff was deprived of specific, articulable rights, privileges or immunities secured by the Constitution and laws of the United States, *Egan v. City of Aurora*, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741 (1961); *Landrum v. Moates*, 576 F.2d 1320 (8th Cir.), *cert. den.*, 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); and that defendants' conduct was a cause in fact of plaintiff's deprivation. *Kregger v. Posner*, 248 F.Supp. 804 (E.D.Mich.1966); S. Nahmod, *Civil Rights and Civil Liberties Litigation* 33–34, 59 (1979). In support of these allegations, plaintiff must set forth highly specific facts. "It is not sufficient to state conclusionary allegations without support in the facts alleged." *Kregger v. Posner*, 248 F.Supp. 804, 806 (E.D.Mich.1966).

■ While plaintiff specifies in general terms the constitutional right which he was allegedly deprived of, namely the right to be secure against unreasonable seizures under the Fourth and Fourteenth amendments, the right not to be deprived of property without due process of law under the Fifth and Fourteenth amendments, and the right to equal protection under the Fourteenth amendment, he fails to allege facts to support these allegations. Nothing is said in the Second Amended Complaint to indicate when or by what acts defendants deprived plaintiff of his rights nor whether plaintiff has in fact asserted a constitutional injury sufficient to invoke § 1983–i. e., whether plaintiff has suffered deprivation of a federal right secured by the Constitution and laws of the United States.

■ Plaintiff alleges he was wrongfully suspended in contravention of civil service

N.Y.1977). The Supreme Court, however, has never directly addressed this issue; in dicta it has inferred that it would require such a showing. *See, Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); Note, "Racially Disproportionate Impact of Facially Neutral Practices–What Approach Under 42 U.S.C. Sections 1981 and 1983?", 1977 *Duke L.J.* 1267 (1977). *But, see, County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), where Justice Powell, in his dissenting opinion, said that it is an open question whether or not 42 U.S.C. § 1981 requires proof

of racially discriminatory intent. 440 U.S. at 636, 99 S.Ct. at 1385.

The Court of Appeals for the Sixth Circuit in *Long v. Ford Motor Co.*, 496 F.2d 500 (1974) gave some indication that it does not require proof of specific intent when it said that a violation of § 1981 could be shown "by proof either that intentional racial prejudice entered into [an employee's] treatment or that a facially neutral practice . . . operates discriminatorily against minority employees." 496 F.2d 500, 506.

rules and regulations. This, however, is not a violation of a federal right or privilege. "In order for [plaintiff] to bring a claim under 42 U.S.C. § 1983, a specific and articulable constitutional right must have been transgressed and a cognizable claim for relief must be stated on the face of the pleading. . . . Rights which derive solely from state law, however, cannot be the subject of a claim for relief under 42 U.S.C. § 1983 . . . .. Only when a violation of state law results in an infringement of a federally protected right can a cause of action be said to exist. . . . 'A violation of a federal constitutional provision must be shown.'" (citations omitted).

. . . . .

". . . the violation of any rights that might arise exclusively by failure to comply with some of the procedures provided by city charter, ordinances and regulations thereunder, do not rise to the level of a federal constitutional violation."

*State of Mo. ex rel. Gore v. Wochner*, 620 F.2d 183 (8th Cir. 1980).

### D.

Plaintiff further claims that defendants Killeen, Morgan and Tungate conspired together "to deprive Your Plaintiff of the equal privileges and immunities under the laws and of equal protection of the laws," under 42 U.S.C. § 1985(3), and that defendants Morgan, Behler, Petitpren, Majors and Kozak failed to prevent such conspiracy despite their knowledge and ability to do so under 42 U.S.C. § 1986.

█ Section 1985(3) makes actionable a conspiracy to deprive a person of the equal protection of the law. Unlike § 1983, "color of law" is not necessary for a § 1985 action; however, it is necessary to allege and prove a conspiracy, the acts in furtherance thereof and that these acts stemmed from a "class–based" animus. *Place v. Shepherd*, 446 F.2d 1239 (6th Cir. 1971); *Family Forum v. Archdiocese of Detroit*, 347 F.Supp. 1167 (E.D.Mich.1972). The conspiracy ". . . must aim at a deprivation of the equal enjoyment of rights secured by the

law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Class–based motivation is an essential element of § 1985(3) claim.

"The language [of the statute] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class–based, invidiously discriminatory animus behind the conspirators' action." (Emphasis in original). *Id.* at 102, 91 S.Ct. at 1798.

█ The Second Amended Complaint fails to allege with any particularity the existence of any class–based, invidiously discriminatory animus behind the actions of defendants which affected plaintiff. Paragraph 17 of the Second Amended Complaint alleges "That each and all of the acts of the Defendants alleged herein were done to Plaintiff, a black person, on the basis of his race and color." The allegations in support merely indicate defendants' actions were directed against plaintiff as an individual because he was charged with a felony, which, according to Rule 14(i) of the commission's rules (attached as an exhibit to the Second Amended Complaint) is a proper ground for "suspension, demotion or removal of any employee in the classified civil service. . . ." Nothing is alleged to support a claim that defendants' actions were part of a general pattern of discrimination against plaintiff based on race or against plaintiff as a member of some identifiable class.

In addition, there is nothing alleged to support a claim that a conspiracy of any kind existed among the defendants or from which a conspiracy might be inferred. The Second Amended Complaint offers conclusory allegations that defendants conspired together to deprive plaintiff of his rights, rather than when or by what acts or means they are claimed to have conspired. This is not enough. *Copley v. Sweet*, 133 F.Supp. 502 (W.D.Mich.1955), *aff'd*, 234 F.2d 660 (6th Cir. 1956).

█ Since no claim is stated under § 1985(3), no claim for relief can lie under

§ 1986 which creates a cause of action only in those situations where a person either neglects or refuses to prevent a conspiracy to deny equal protection despite the power to do so. A § 1986 claim is totally dependent upon § 1985 for vitality. *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975); *Doyle v. Unicare Health Serv., Inc., Aurora Center*, 399 F.Supp. 69 (N.D.Ill.1975), *aff'd*, 541 F.2d 283 (7th Cir. 1976).

## V.

The Court is not unmindful of the stringent test that must be met before a civil rights lawsuit can be dismissed on the pleadings. *Lucarell v. McNair*, 453 F.2d 836 (6th Cir. 1972). For this reason the remainder of defendants' grounds are considered.

### A.

Defendants each claim some degree of immunity from suit. Defendants, Petitpren, Kozak and Majors claim judicial, quasi–judicial, legislative, and quasi–legislative immunity; defendant Behler claims quasi-legislative immunity; defendant Morgan claims legislative immunity; and defendant Tungate claims judicial immunity. The mere fact that defendants assert such immunity, however, does not per se establish that they are entitled to it.

Immunity was developed at common law on behalf of public officials charged with making decisions in the course of performing their official duty.[11] Its purpose is to prevent "1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required by the legal obligations of his position to exercise discretion; 2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good," *Scheuer v. Rhodes*, 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974), and 3) the fear that threat of personal liability might deter citizens from holding public office. *Wood v. Strickland*, 420 U.S. 308, 320, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975).

> "If those who exercise governmental responsibilities are not afforded some protection from liability, it is feared that they will carry out their duties with excessive caution and will avoid making difficult decisions, which must be made if the public's business is to be effectively administered." [12]

Federal courts have extended varying degrees of immunity to legislators, *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), to judges and police officers, *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), as well as to different state and local officials acting within the scope of their duties.[13] By the nature of their positions defendants Petitpren, Kozak, Majors, Behler and Morgan function at different times as legislators promulgating statutes, rules and regulations, and as judges regarding persons suspended or removed from county service.

Courts have consistently held, however, that municipal and county level personnel in positions similar to defendants do not enjoy absolute immunity, *Thomas v. Younglove*, 545 F.2d 1171 (9th Cir. 1976); *Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975), but instead are clothed with qualified immunity.[14] In *Nelson v. Knox*, 256 F.2d

---

11. *Official Liability: Immunity Under Section 1983*, p. 6, The National Association of Attorneys General, July 1979.

12. *Id.* at 7.

13. Prison officials and officers, *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); prosecutors, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); local school board members, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); and state governors and other executive officers, *Scheuer v.*

Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

14. In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Supreme Court extended absolute immunity of federal and state legislators to regional legislators of an interstate agency created by interstate compact. However, it did not decide whether absolute immunity extended to legislative functions at the local level.

In *Gorman Towers, Inc. v. Bogoslavsky*, 607 F.2d 626, 49 U.S.L.W. 2081 (7/22/80), however,

312 (6th Cir. 1958), plaintiff sought damages against city commissioners for allegedly destroying his garage business by passing arbitrary and discriminatory ordinances. The Court of Appeals held the commissioners were not clothed with absolute immunity, but only qualified immunity for acts done in good faith in the performance of their official duty. *Accord, Parine v. Levine,* 274 F.Supp. 268 (E.D.Mich.1967). In relying on *Cobb v. City of Malden,* 202 F.2d 701 (1st Cir. 1953) the Court of Appeals noted, however, that members of the city council would be liable where they knew their actions would result in a deprivation to plaintiff of a right or privilege secured by the United States' Constitution. *See also, Curry v. Gillette,* 461 F.2d 1003 (6th Cir. 1972), wherein the Court of Appeals held that good faith qualified immunity was available to member of the board of mayor and alderman of municipality. Defendants then, possess, at most, only qualified immunity.

The Supreme Court in *Gomez v. Toledo,* —— U.S. ——, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) recently held that in asserting qualified immunity the burden is on a defendant to plead good faith as an affirmative defense. *Accord, Jones v. Perrigan,* 459 F.2d 81 (1972).

> "Since qualified immunity is a defense, the burden of pleading it rests with the defendant.
>
> .   .   .   .   .
>
> It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith."

*Gomez, supra,* at ——, 100 S.Ct. at 1924. ■ Defendants in their motions merely set forth conclusory statements that they are clothed with immunity without affirmatively pleading good faith. Under *Gomez* this is not enough and therefore the bare claims of defendants Petitpren, Kozak, Majors, Behler and Morgan for immunity will not protect them from being required to defend.

Defendant Tungate's claim of judicial immunity is likewise inadequate for the reason that he is not entitled to such absolute immunity. In Count II of the Second Amended Complaint defendant Tungate is charged with being the complainant in a criminal matter from which the disciplinary action against plaintiff arose. It is based on this status that defendant Tungate apparently claims immunity.

■ Judicial immunity holds one absolutely immune from suit for acts committed within their judicial jurisdiction. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This defense is a broad one and by its very nature is limited to judges or persons acting in a judicial capacity where their performance is an integral part of the judicial process. *Id.* It does not, however, protect against liability arising from non-judicial activity. *Lynch v. Johnson,* 420 F.2d 818 (6th Cir. 1970).

■ Nothing is presented to show that defendant Tungate was performing any judicial act or function as the complainant in a criminal matter to entitle him to the defense of judicial immunity. At very best, defendant Tungate, as Chief Deputy Court Clerk, is clothed with a qualified privilege. *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973). In view of *Gomez v. Toledo, supra,* an affirmative pleading is required which is absent here.

### B.

Defendants also claim that any action on plaintiff's suspension of October 5, 1977 to January 2, 1978 is precluded by collateral

---

the Eighth Circuit Court of Appeals recently held that members of a municipality's board of directors were absolutely immune from liability under § 1983 for legislating allegedly unconstitutional zoning ordinances. The Court of Appeals found the same compelling reasons for extending absolute immunity to local level legislators as have existed for federal, regional and state legislators. The Sixth Circuit has yet to indicate any agreement with this point of view.

estoppel and/or res judicata, having already been litigated before the Wayne County Circuit Court, the Michigan Court of Appeals and the Michigan Supreme Court.

While collateral estoppel and res judicata are two distinct doctrines, they have been treated as one which has resulted in a general definition which amounts to the prevention of relitigation of the same cause of action or the same facts or issues in a subsequent action. 46 *Am.Jur.2d* Judgments § 397 (1969). Plaintiff challenges his October 5, 1977 suspension on the grounds it was issued without authority and contravenes the rules and regulations of the Commission, and as such violates his constitutional rights. Plaintiff appealed this suspension by application for a writ of mandamus to the Wayne County Circuit Court, and upon denial, then to the Michigan Court of Appeals and the Michigan Supreme Court. In keeping with the principle above cited, it would appear that plaintiff has had his day in court on the suspension of October 5, 1977 and that, therefore, he is precluded from seeking further relief. In view of the Court's determination on the previous issues, however, there is no need to decide the validity of this claim now.

### C.

Defendants further argue that Count VII of the Second Amended Complaint charging libel and/or slander, fails to state a cause of action as to them since it makes no specific allegations regarding their participation nor specifically mentions their names. Paragraph 107 of the Second Amended Complaint alleges that the "named defendants" are guilty of libel and/or slander because their "actions and non–feasance or malfeasance has caused [plaintiff] to be an object of derision and humiliation and an outcast among his peers and in society generally." The claim is premised on statements allegedly made by defendant Killeen to the news media and the resulting newspaper article about plaintiff's refusal to testify before a grand jury in a related criminal matter.

It is generally accepted that a claim based on libel and/or slander requires plaintiff to plead and prove that the matter complained of is false and defamatory and published or communicated to a third person with malice or bad intent. Prosser, *Law of Torts* §§ 111–113 (1971). Every person who either directly or indirectly publishes or assists in the publication of an actionable defamatory statement is liable for it. *Bowerman v. Detroit Free Press*, 279 Mich. 480, 272 N.W. 876 (1937).

There are no allegations in the Second Amended Complaint that defendants had any involvement in the publication of the allegedly defamatory statements. Plaintiff merely claims defendants' actions, presumably in disciplining plaintiff, caused him humiliation. Again this does not appear to be enough to constitute a cause of action against defendants in libel or slander and would therefore entitle defendants to dismissal of this aspect of the case, however, there is no need to decide this now considering the Court's determination of the rest of the case.

### VI.

While Wayne County may decide that participation in a crime involving moral turpitude may render an employee unqualified for employment, this criterion must be applied equally to all of its employees, regardless of race. There is nothing in the Second Amended Complaint to support the claim that defendants treated plaintiff unequally or that they deprived him of rights, privileges or immunities secured by the constitution or that they deprived him of contractual or procedural rights arising from his employment. An examination of the Second Amended Complaint merely shows a series of broad conclusory statements unsupported, for the most part, by specific allegations of fact.

In fact, there is a basis for the court to conclude defendants acted within the bounds of their authority as dictated by the rules of the Commission. Rule 14 § 1(i) provides for suspension, demotion or removal of an employee charged with the commis-

sion of a felony or misdemeanor involving moral turpitude, and §§ 9 and 10 provide for appeal procedures to the Commission as well as authority for the Commission to use discretion in either affirming, modifying or revoking orders of discipline. While plaintiff claims such rules and regulations violate his constitutional rights, this has no bearing on the validity of defendants' conduct since, under the circumstances, they had no duty to question or defy rules which were presumed valid and had not yet been attacked. *Hanna v. Drobnick*, 514 F.2d 393 (6th Cir. 1975).

Since this case was first filed on January 31, 1978, plaintiff has twice amended his original complaint. While there are probably a number of assertions in the latest version that plaintiff will be unable to support with factual allegations sufficient to state a claim under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986 there are others which plaintiff may be able to reframe in an amended complaint so as to defeat a motion to dismiss.

Therefore, for the reasons stated, defendants' motions to dismiss with the exception of defendant Tungate's motion as to the suspension of October 5, 1977,[15] are granted with plaintiff given leave to file a third amended complaint pursuant to Fed.R. Civ.P. 15.

SO ORDERED.

---

**15.** With regard to this suspension apparently defendant Tungate was acting in the role of the appointing authority and, therefore, to the extent defendant Killeen remains a party as a result of his action as appointing authority, defendant Tungate remains a party.