Richard J. BRADY, Plaintiff,

v.

Basil A. PATERSON, as Secretary of State, Robert Abrams, as Attorney General, and David Axelrod, as Commissioner of Health, individually and collectively as constituting the State Cemetery Board of the Division of Cemeteries of New York State, Department of State, Defendants.

No. 81–CV–431.

United States District Court,
N. D. New York.

June 8, 1981.

DeGraff, Foy, Conway, Holt-Harris & Mealey, Carroll Mealey, Barbara Brenner, Albany, N. Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York, Lawrence L. Doolittle, Asst. Atty. Gen., Albany, N. Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

In *Elrod v. Burns*[1] and again in *Branti v. Finkel*,[2] the Supreme Court of the United States held that certain public employees, who served at the pleasure of their superiors, were deprived of their constitutional rights under the First and Fourteenth Amendments when they were discharged or threatened with discharge solely because of their partisan political affiliations or beliefs. The question raised by the present motion is whether plaintiff, a hold-over term appointee, is entitled to invoke these constitutional protections in a suit alleging that he is threatened with replacement rather than reappointment solely because of partisan considerations? None of the several opinions in *Elrod* and *Branti* answer that question directly, for in both cases, "the only practice at issue was the *dismissal* of public employees for partisan reasons." *Branti, supra*, 100 S.Ct. at 1292, n. 7 (emphasis added). Thus, the question here involved may be reframed as follows: Is there a constitutional difference between the attempted replacement of a hold-over appointee solely for partisan reasons and the patronage discharges proscribed by the Supreme Court in *Elrod* and *Branti*?

---

1. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

2. *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

The State defendants contend that such a distinction exists because under New York State law, a hold-over term appointee has no constitutionally protectable property interest in continued public employment, and therefore plaintiff has failed to state a constitutional claim even if he is to be replaced solely because of his political beliefs.[3] The validity of this argument depends, however, on the assumption that due process concepts of state-created property interests are coextensive with the scope of First and Fourteenth Amendment protections. However, even if this Court were to agree that under no circumstances can a hold-over appointee acquire a protectable interest in continued employment,[4] the opinions in both *Elrod* and *Branti* make plain that plaintiff's alleged lack of a contractual or statutory right to continued employment is immaterial to the invocation of First Amendment protections. Accordingly, defendants' motion to dismiss for failure to state a claim must be denied.

## I.

Plaintiff Richard Brady commenced this action for injunctive and monetary relief to protect his position as Director of the Division of Cemeteries of the New York State Department of State. Plaintiff, a member of the Republican Party, was originally appointed Director on December 24, 1974 to serve out the remainder of an unexpired six year term which ended on April 15, 1980. At the time of his appointment in 1974, all three members of the State Cemetery Board[5] as well as the Governor of the State of New York were also members of the Republican Party. By the expiration of plaintiff's original term, however, control of the Governor's office and the Cemetery Board had shifted to the Democrats. Notwithstanding this shift in party control, the Cemetery Board permitted plaintiff to continue in office beyond the expiration of his original term. Since the Cemetery Board did not formally reappoint plaintiff as Director, his status during the early months of this year may properly be described as that of a hold-over appointee.

Plaintiff's suit alleges that at a meeting of the Cemetery Board on March 25, 1981, defendant Basil Paterson, as Secretary of State and Chairman of the Cemetery Board, nominated and the full Board voted to appoint Pearce M. O'Callaghan to the position of Director for a term to expire on April 15, 1986. Plaintiff further alleges that the appointment was to become effective on April 23, 1981.

On April 22, 1981, plaintiff commenced this action and, by order to show cause, sought a temporary restraining order and a preliminary injunction enjoining the defendants from taking any action to terminate or replace plaintiff as Director of the Division of Cemeteries. The named defendants include the Secretary of State of the State of New York, the Attorney General and the Commissioner of Health; they are sued in their official capacities both individually and as constituting the State Cemetery Board of the New York State Department of State. Plaintiff's suit alleges that the defendants attempt to replace him and to appoint O'Callaghan as his successor "based solely on political grounds because of plaintiff's affiliation with the Republican Party...." Plaintiff further alleges that party affiliation is not an appropriate requirement for the effective performance of the office of Director of the Division of Cemeteries. Plaintiff therefore claims that the defendants' attempt to replace him for partisan reasons violated his rights under

---

3. Affidavit of Lawrence L. Doolittle, A.A.G., April 28, 1981, ¶ 5.

4. In light of the allegations in the complaint and the evidence presented prior to the adjournment of the hearing on the request for a preliminary injunction, the Court would be reluctant to agree that plaintiff can prove no set of facts that would establish a protectable interest in his continued employment. However,

since the question is immaterial to plaintiff's First Amendment claim, the Court has no occasion to address the point at this stage of the lawsuit.

5. The Cemetery Board is composed of the Secretary of State, the Attorney General and the Commissioner of Health.

the First and Fourteenth Amendments and in violation of 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

On April 22, 1981, I issued the requested temporary restraining order, which was to remain in effect for ten days so as to permit the development of a factual record at an evidentiary hearing scheduled for April 29, 1981. At the start of that hearing, the defendants orally moved to dismiss the complaint on the ground that it failed to state a cause of action.[6] I reserved on the motion and ordered the hearing to proceed. Evidence was presented on April 29th and again on May 1, 1981. With respect to the issue of plaintiff's likelihood of success on the merits, counsel were informed that the evidence adduced would be considered on the merits upon the plenary trial. I also stated that if at the conclusion of the preliminary injunction hearing, the parties indicated that no further proof would be forthcoming, then the plenary trial would be consolidated with the present hearing pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. In an effort to focus the presentation of evidence, I identified the three basic issues found by the Court to be crucial to a disposition on the merits:

1. As a threshold matter, can plaintiff establish by a preponderance of the evidence that his attempted replacement was based solely on partisan political considerations?

2. If so, can the State hiring authority meet its burden of demonstrating that Party affiliation is an appropriate re-

quirement for the effective performance of the office of the Director of the Division of Cemeteries?

3. Finally, if plaintiff meets his burden on the threshold issue and if the defendants fail to establish that party affiliation is an appropriate requirement for the effective discharge of the office of Director, is there an analytic distinction for First and Fourteenth Amendment purposes between the replacement of a holdover employee and the dismissal of a public employee who serves at the pleasure of his or her superior and who may be discharged for any reason or for no reason at any time?

Following a discussion among the Court and counsel, the defendants renewed their motion to dismiss on the ground that an affirmative answer to the third issue set out above would dispose of the need to proceed further in the case. Accordingly, the hearing was adjourned pending decision on the motion to dismiss and the temporary restraining order was extended by consent of the parties.[7]

As noted at the outset of this opinion, plaintiff's claim rests primarily on the *Elrod* and *Branti* decisions, and the defendants' motion to dismiss asserts that the principles there established have no application to this or other so-called "failure to reappoint" cases. Since this is a motion to dismiss, the Court must accept as true plaintiff's allegation that the defendants attempted to replace him solely for partisan political con-

---

**6.** Defendants also moved to dismiss plaintiff's claim for monetary damages on the ground that such relief is barred by the Eleventh Amendment. Decision was reserved on that motion.

**7.** Unfortunately, there appears to have been some uncertainty as to the scope and proper interpretation of the April 22, 1981 order. That order was designed to preserve the *status quo* as it existed on March 25, 1981 prior to the alleged unconstitutional actions of the defendants herein. That order was directed not only to the named defendants, but also to "their agents, servants, employees, and attorneys, and all persons in active concert and participation with them..." The plain import of the order was to insure that plaintiff's status as Director of the Division of Cemeteries continued unin-

terrupted and unimpeded during the effective period. Upon the application of plaintiff stating in part that his discharge of the office of Director was being impeded by actions of various persons covered by the terms of the restraining order, I issued an order on May 27, 1981 directing the named defendants and Pearce O'Callaghan to appear on June 1, 1981 and show cause why they should not be held in civil contempt with this Court's order of April 22, 1981. On the return date, the application for contempt was denied without prejudice and the restraining order was amended to remove any uncertainty regarding its nature and scope. If any further difficulties should arise, the parties shall present them to the Court, rather than take unilateral action.

siderations and the further allegation that party affiliation is not an appropriate requirement for the effective performance of the office of Director of the Division of Cemeteries. It is the defendants' position that even assuming the truth of these two allegations, the First and Fourteenth Amendment protections established in *Elrod* and *Branti* cannot be invoked by a public employee who lacks a contractual or statutory right to continued employment. For the reasons stated below, this Court disagrees.

It is true that both *Elrod* and *Branti* involved discharges or threats to discharge public employees for partisan reasons. But it is equally clear that neither case lends support to the proposition that due process concepts of state-created property interests are an appropriate measure of the First and Fourteenth Amendment principles enunciated in those cases. In fact, both Justice Brennan's plurality opinion and Justice Stewart's concurrence in *Elrod* relied expressly on the following passage from *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972):

> ■ For at least a quarter-century, this court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible.
>
> . . . .

Thus, the respondent's lack of a contractual or tenure "right" to re-employment for the 1969–1970 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. *Shelton v. Tucker* [364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231], supra; *Keyishian v. Board of Regents* [385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629], supra. We reaffirm those holdings here.

Thus, even if Justice Stewart's concurrence were to be read as stating the holding in *Elrod,* the express reference to the non-rehiring situations involved in cases like *Sindermann* strongly suggests that even an employee who has no legitimate expectation of continued employment may not be replaced solely for partisan political reasons. This view finds further support in the *Branti* decision.

Moreover, a brief comparison of the employment status of the plaintiffs in *Elrod* and *Branti* and the constitutional analysis employed in *Sindermann* demonstrates that the Court's reliance on the latter case was not simply fortuitous. The plaintiffs in *Elrod* and *Branti* served at the pleasure of their superiors and were apparently subject to discharge at any time and for almost any reason. *Elrod, supra,* 96 S.Ct. at 2678; *Branti, supra,* 100 S.Ct. at 1290. But despite this stated absence of a state-created property interest in continued public employment, the Court reasoned by analogy to the *Sindermann* line of cases that a discharge or a refusal to rehire may not be premised on such constitutionally impermissible criteria as the employee's race, religion or political beliefs or party affiliation. *Branti, supra,* 100 S.Ct. at 1293; citing, *Sindermann, supra,* 408 U.S. at 597–98, 92 S.Ct. 2697–2698; *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, and *Cafeteria Workers v.*

*McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). *See also, Lutcher v. Musicians Union Local 40*, 633 F.2d 880, 885–86 (9th Cir. 1980). *Shelton v. Tucker* is instructive on the question here involved since that case involved a non-tenured public school teacher, and the Court specifically held that the *nonrenewal* of the teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. If a non-tenured public school teacher is entitled to invoke *Branti* to challenge a decision not to renew an expired one-year contract, the fact that plaintiff here is a hold-over term appointee threatened with replacement by a public hiring authority cannot be said to require dismissal of a *Branti*-type claim.

Defendants have not cited, and the Court's research has not disclosed any legal authority for the proposition that *Branti* has no application to failure to reappoint cases. In three decisions which considered a refusal to reappoint the courts assumed, without deciding, that the principles in *Elrod* and *Branti* apply. In *Ramey v. Harber*, 431 F.Supp. 657 (W.D.Va.1977), an advisory jury found that several deputy sheriffs whose terms had ended with the term of their appointing superior were denied reappointment by the newly-elected sheriff solely because of their partisan political affiliation. In denying defendants' motion for judgment n.o.v., Chief Judge Turk considered and rejected the argument that *Elrod* had no application to a failure to reappoint situation:

> ... The mere fact that plaintiffs had no vested right to reappointment cannot be dispositive of their claim of constitutional infringement... Thus, the fact that plaintiffs had no right to expect reappointment is insufficient, in itself, to preclude a First Amendment action... Consequently, the court is unable to perceive any difference in the test to be applied when the lack of expectancy interest arises out of the operation of contract renewal (as in *Shelton v. Tucker*) and when, as here, the lack of expectancy interest arises through the operation of statute.

> It is clear that in First Amendment actions, the *reason* for dismissal or failure to reappoint presents the crucial question ... Stated briefly, while Sheriff Harber could have refused to consider continued employment for the Flanary deputies for numerous and valid reasons, he could not refuse consideration for the wrong reasons.

*Id.*, 431 F.Supp. at 663–64 (emphasis in original; footnotes and citations omitted). On appeal, the Fourth Circuit Court of Appeals reversed that part of Judge Turk's judgment that ordered plaintiff's reinstatement and an award of attorney's fees, because in that court's view, the decision in *Elrod* should not have been applied retrospectively to reach patronage practices committed prior to the Supreme Court's decision. 589 F.2d 753 at 757–60. In view of that conclusion, the court found it unnecessary to decide whether *Elrod* applied to a failure to reappoint situation. *Id.* at 757. In both *Garretto v. Cooperman*, 510 F.Supp. 816 at 818 n.1 (S.D.N.Y.1981) and *Bavoso v. Harding*, 507 F.Supp. 313 (S.D.N.Y.1980), the courts assumed that *Elrod* and *Branti* applied in failure to rehire cases, but concluded on the merits that plaintiffs were not entitled to relief under differing statements of the *Branti* test. *See also*, Note, "Patronage and the First Amendment after *Elrod v. Burns*," 78 Colum.L.Rev. 468, 474–75 (1978) ("Thus, in the case of non-rehiring, the outcome of the balancing of the burden on first amendment rights against the furtherance of vital state interests is almost identical to the result arrived at in the case of patronage dismissals.")

In conclusion, I hold only that plaintiff's status as a hold-over term appointee does not, standing alone, preclude him from invoking the First and Fourteenth Amendment protections established in *Branti*. To hold otherwise would be contrary to the well-settled First Amendment principles on which *Elrod* and *Branti* rest. In order to make out a prima facie case, plaintiff must still establish that the defendants' decision to replace him as Director was based *solely* on partisan political considerations. *Branti,*

**700**

*supra; see also, Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). At that point, the burden shifts to defendants to prove that party affiliation is an appropriate requirement for the effective discharge of the office of Director of the Division of Cemeteries. Nothing in this opinion should be construed as expressing an opinion on either of these issues.

## CONCLUSION

For all of the foregoing reasons, the defendants' motion to dismiss is denied. The evidentiary hearing on the plaintiff's request for preliminary and permanent injunctive relief, which was adjourned pending disposition of this motion is to be resumed at 10:00 a. m., June 15, 1981, at the U. S. Courthouse, Albany, New York. The temporary restraining order of April 22, 1981, as amended by Order of this Court on June 1, 1981 at a hearing in Albany, New York, is continued in full force and effect upon consent of the parties until ten days after the conclusion of the evidentiary hearing.

IT IS SO ORDERED.