See also 530 F.Supp. 1165.

**Robert J. VISSER, Plaintiff,**

v.

**Armand MAGNARELLI, James C. Tormey, Jr., Joseph A. Nicoletti, Bernard J. Mahoney, John A. DeFrancisco, Walter J. Ludovico, Edward S. Nowakowski, James T. Walsh, James P. McCarthy, Nancy Larraine Hoffmann, individually and collectively as constituting the Common Council of the City of Syracuse, New York, and Joseph Falge, Defendants.**

No. 81–CV–1404 (HGM).

United States District Court,
N. D. New York.

July 9, 1982.

McCrone & Davis, Syracuse, N. Y., for plaintiff; Jeffrey M. McCrone, Syracuse, N. Y., of counsel.

David M. Garber, Corp. Counsel, Syracuse, N. Y., for defendants-councilors; Anthony S. Bottar, Eleanor Theodore, Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff brought this civil rights action for injunctive and monetary relief to protect his position as City Clerk of the City of Syracuse, New York. This Court found in favor of plaintiff, and enjoined defendants-councilors from dismissing or failing to re-elect him solely on grounds of his political affiliation. 530 F.Supp. 1165. The Court assumes the reader's familiarity with that opinion. Presently before the Court is plaintiff's motion for a determination of damages and costs.

### I.

■ Plaintiff seeks only attorneys' fees as a part of his costs.[1] 42 U.S.C. § 1988 (1976), *as amended by* Equal Access to Justice Act, Pub.L.No.96–481, § 205(c), 94 Stat. 2330 (1980), provides in pertinent part that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983, *inter alia*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part

of the costs." Section 1988's legislative history indicates that counsel fees should ordinarily be awarded to prevailing litigants, unless special circumstances would render an award unjust. S.Rep.No.94–1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908, 5912 [Senate Report] (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (*per curiam*)). This liberal policy reflects Congress' purpose not only to penalize constitutional violators but to encourage resort to courts to seek judicial relief for such transgressions. *Id.; Nadeau v. Helgemoe*, 581 F.2d 275, 280 (1st Cir. 1978).

Here, a majority of the Syracuse Common Council violated plaintiff's First Amendment rights of freedom of belief and association by refusing to rehire Visser solely because of his political affiliations. 530 F.Supp. at 1173. If this Court determines, however, that the Republicans' action was "legislative," *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), precludes imposing counsel fees on them personally.[2]

---

1. Plaintiff acknowledges that because of the temporary restraining order and injunction granted by this Court, he has not suffered any damages. Plaintiff's Brief at 2. The Court denied plaintiff's request for punitive damages. *Visser v. Magnarelli*, 530 F.Supp. 1165, 1166 (N.D.N.Y.1982). *See also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) (municipality immune from liability for punitive damages for bad faith actions of its officers in § 1983 suit).

2. *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), circumscribes the broad congressional purpose to award attorneys' fees in civil rights actions.

In passing the Civil Rights Attorney's Fees Awards Act, Congress specifically distinguished damage awards from counsel fees, characterizing the latter as an element of costs. S.Rep.No.94–1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913; *Fernandes v. Limmer*, 663 F.2d 619, 637 (5th Cir. 1981). Following this theory, the Act's legislative history indicates that Congress intended to allow an award of counsel fees even for defendants immune from damages. *See* H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 9 & n.17 (1976):

> [I]n some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy.[17] Consequently awarding counsel fees to prevailing plaintiffs in such litigation is particularly important and necessary if federal civil and constitutional rights are to be adequately protected.

Footnote 17 reads as follows:

> *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1638, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

*See also Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497, 507 (7th Cir. 1980) (denying qualified immunity defense for village officials in obscene movie theater case), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981); *Morrison v. Ayoob*, 627 F.2d 669, 673 (3d Cir. 1980) (judicial immunity irrelevant to § 1988), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981).

In *Supreme Court of Virginia*, however, the Supreme Court vacated an award of counsel fees against state court judges acting in a legislative capacity. The Court thus narrowed Congress' seemingly broad mandate and equated § 1983 liability with § 1988 counsel fee

Properly interpreted, the Common Council majority's action falls outside the scope of absolute legislative immunity. Supreme Court language discusses the extent of the privilege only in general terms;[3] no precise formulation exists to guide this Court. Having reviewed the available possibilities, the Court adopts the two-pronged analysis of *Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427, 1510–11 (1978). Under that test, the Court must first discern "the type of underlying facts on which the decision is based," and then consider "whether the government action results in a differentiable impact on specifiable individuals." *Id.* at 1510.[4]

The action here was clearly administrative. The Republican councilors based their decision not to rehire Visser solely on the specific fact of his party affiliation. No consideration of the general qualifications of a city clerk pervaded the Council's decision. *See id.* at 1510–11 (distinguishing between legislative and administrative facts). Similarly, the Council's vote impacted only one individual—Visser. Even though the councilors' vote was the formal means of making their decision, their action can only

awards, at least as to absolute legislative immunity. *See also Consumers Union of United States, Inc. v. American Bar Association,* 470 F.Supp. 1055, 1069–70 (E.D.Va.1979) (dissenting opinion) (noting that in the legislative history's discussion of overriding damage immunity doctrines to allow feè shifting, footnote 17 cited only executive and judicial immunity cases, not actions involving legislative immunity), *vacated and remanded sub nom. Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). *But see Fernandes, supra,* 663 F.2d at 637 (stating that legislative immunity from damage awards is "irrelevant" to determining an award of counsel fees). *See also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 406, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979) (granting absolute immunity to members of regional planning agency acting in a legislative capacity, but limiting its holding to immunity from damages liability).

3. In *Kilbourn v. Thompson,* 103 U.S. 168, 204, 26 L.Ed. 377 (1880), the Court gave the following "definition" of the Speech or Debate Clause: "[it applies] to things generally done in a session of the House by one of its members in relation to the business before it." Given as a summary of several specific examples of legislative activity, none of which are as broad as the Court's conclusion, the statement should be read as dictum.

In granting state legislators absolute immunity from liability in civil rights suits in *Tenney v. Brandhove,* 341 U.S. 367, 379, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951), the Supreme Court limited legislative immunity to officials who were "acting in a field where legislators traditionally have power to act." What is limited by that broad definition is unclear. *Tenney's* facts involved an unquestionably traditional legislative act—an investigation by a legislative committee. Thus the facts provide no clue to the extent of the privilege.

The *Tenney* Court did discuss the scope of the immunity, but only in similar panoramic language: "To find that a [legislator] has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in the Judiciary or the Executive." *Id.* at 378, 71 S.Ct. at 789. The Court provided no examples of such a usurpation.

Similarly, in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Court extended absolute immunity to members of a regional planning agency acting in a legislative manner. The Court, however, never discussed the members' exact duties, stating only that the challenged action related to a land use plan. *Id.* at 394, 99 S.Ct. at 1174. In dissent, Justice Blackmun argued that the members possessed some executive power as well, and would have granted defendants only qualified immunity. *Id.* at 408–09, 99 S.Ct. at 1181.

4. *Yakus v. United States,* 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944), prescribes a similar test: "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct...." By emphasizing policy formulation, the Court impliedly concentrated on rules of general applicability. *See also Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118, 1136 (W.D.Pa.1980):

Legislative acts are said to be broad, general policy statements establishing guidelines by which the future conduct of an entire group of persons falling within a particular classification will be judged ... By contrast, executive or administrative acts in this context generally consist of the application of legislation to specific situations.

(Citations omitted).

be characterized as an administrative personnel matter, not legislative.

Section 3–106(2) of the Syracuse City Charter buttresses this conclusion. The section requires the Council to "adopt rules governing its officers and employees."[5] Similarly, other sections of the Charter describing the Council's duties reiterate the principle that the Council often involves itself in administrative housekeeping matters far removed from legislative acts. *See, e.g.*, Charter § 8–106 (Council to prescribe hours that city offices are to be open to the public); *id.* § 3–109 (Council may require "the form in which . . . proceedings and reports . . . shall be issued"). Actions under these provisions, like the Council's non-rehiring of its chief employee, the City Clerk, involve no policy formulation. They are not legislative actions.

Legislative immunity failed to exempt a Congressman's unconstitutional employment dismissal in *Davis v. Passman*, 544 F.2d 865 (5th Cir. 1977), *rev'd*, 571 F.2d 793 (5th Cir. 1979) (*en banc*), *rev'd*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Congressman Passman hired and then fired Shirley Davis as a deputy administrative assistant, writing her that he needed a man in that position. 544 F.2d at 867. Davis sued, alleging sex discrimination. The Fifth Circuit panel rejected the Congressman's claim that legislative immunity through the Speech or Debate Clause barred the suit.[6] The court noted that Supreme Court precedent construing the clause refused to make legislative immunity for federal lawmakers all-pervasive.[7] The panel limited legislative immunity to acts "intimately cognate to the legislative process" and held that "[w]hen members of Congress dismiss employees they are neither legislating nor formulating legislation. The fear of judicial inquiry into dismissal decisions cannot possibly affect a legislator's decisions on matters pending before Congress." *Id.* at 879, 880.[8]

---

**5.** Charter of the City of Syracuse, New York—1960 [Charter], § 3–106(2). Here, even assuming arguendo that a general rule promulgated under this section setting qualifications for the City Clerk's position is to be considered legislative, *cf. Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118, 1136 (W.D.Pa. 1980), a vote not to rehire plaintiff is an administrative act. *Id.*

**6.** Article I, § 6, of the United States Constitution provides in part that "for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place."

**7.** The panel quoted extensively from Supreme Court cases narrowing the types of business related acts protected by legislative immunity. For example, *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), held the Speech or Debate Clause inapplicable to an arrangement for private publication of classified government documents. The *Gravel* Court emphasized that the fact that "Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature." *Id.* at 624–25, 92 S.Ct. at 2627. The Court continued:

Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with re-

spect to other matters which the Constitution places within the jurisdiction of either House. *Id.* at 625, 92 S.Ct. at 2627 (*quoted in Davis, supra*, 544 F.2d at 879–80). *See also Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (Speech or Debate Clause inapplicable to congressional dissemination of information through press releases or newsletters); *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) (Speech or Debate Clause inapplicable to public dissemination of materials infringing on individual privacy).

**8.** Davis had based her complaint on the equal protection component of the Fifth Amendment's due process clause. 544 F.2d at 868. The Fifth Circuit, sitting *en banc*, reversed the panel's decision, holding that "no right of action may be implied from the Due Process Clause of the fifth amendment." 571 F.2d at 801. The Supreme Court reversed the *en banc* court's holding. Neither the Fifth Circuit sitting *en banc* nor the Supreme Court addressed the legislative immunity question. 442 U.S. at 235 n.11, 99 S.Ct. at 2272 n.11.

The panel opinion in *Davis* shows that the Common Council's employment decision falls outside the core of legislative activity protected by the Speech or Debate Clause. Defendants' reliance on cases construing the scope of legislative immunity for federal lawmakers is misplaced for another reason as well. The separation of powers doctrine provides the rationale for protecting federal legislators' activities un-

der the Speech or Debate Clause. *Davis, supra*, 442 U.S. at 235 n.11, 99 S.Ct. at 2272 n.11. The principle has no effect, however, on federal courts' powers in suits involving state or local officials. *Elrod v. Burns*, 427 U.S. 347, 352, 96 S.Ct. 2673, 2679, 49 L.Ed.2d 547 (1976). The Supreme Court explicitly held the Speech or Debate Clause inapplicable as a rationale for legislative immunity for non-federal lawmakers in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 405, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979). *See also* Note, *Official Immunity in Federal Court*: Supreme Court of Virginia v. Consumers Union of the United States, Inc., 67 Cornell L.Rev. 188, 190–93, 199–200 (1981) ("the distinction between federalism analysis and separation of powers analysis suggests differences between the scope of immunity for state and federal officials."); Comment, *A New Perspective on Legislative Immunity in Section 1983 Actions*, 28 U.C.L.A.L.Rev. 1087, 1117 (1981). Thus, to the extent the cases relied on by defendants use the Speech or Debate Clause as their rationale, they are inapplicable here.

Characterizing defendants-councilors' actions as administrative rather than as legislative carries the additional advantage of cutting a fairly straightforward swath through the maze of conflicting law and rationales in this area. A converse finding plunges the Court into a quicksand of issues: whether absolute or qualified immunity should apply to legislators' deeds; if absolute immunity attaches, whether the "enforcement" exception of *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, will still provide liability against defendants in their official capacities; and whether the city should be forced to pay counsel fees if defendants are absolutely immune.

The problem stems from attempting to reconcile at least two important but conflicting social goals: compensating the victim and immunity from judicial proceedings for government officials. At least four reasons exist for official immunity:

First, imposition of personal liability upon officials duty-bound to perform the acts giving rise to the claim would deter qualified individuals from entering government service. Second, representative government requires official immunity to prevent the threat of personal liability from improperly influencing the decisions of government officials exercising their discretionary powers. Third, defending against personal liability claims would distract officials from performing their public duties. Finally, judicial review might disrupt government efforts to conduct official business.

Note, *supra*, at 191 (footnotes omitted). The policy of compensating the victim is just as firmly etched in American jurisprudence. Other social goals also come into play here, creating further conflict. *See generally* Schuck, *Suing our Servants: The Court, Congress, and the Liability of Public Officials for Damages*, 1980 Sup.Ct.Rev. 281, 285.

The problem here is complicated by one additional factor. Plaintiff, the "victim," has suffered no damages, but Congress has chosen to override the American Rule and award attorneys' fees to prevailing parties in civil rights litigation. With these considerations in mind, the Court proceeds to review the immunity issues emanating from a finding of "legislative" action.

a. Qualified v. absolute immunity. *Lake Country Estates* accorded absolute legislative immunity to regional planners, but explicitly reserved the question of extending that same protection to local legislators. 440 U.S. at 404 n.26, 99 S.Ct. at 1178 n.26. The Fourth, Fifth and Eighth Circuits, following the Court's functional analysis, have granted local lawmakers absolute immunity. *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 611–14 (8th Cir. 1980); *Universal Amusement Co. v. Hofheinz*, 616 F.2d 202, 205 (5th Cir. 1980), *modified on other grounds*, 646 F.2d 996 (5th Cir. 1981). Other post-*Lake Country Estates* decisions are to the contrary. *See, e.g., Nekolny v. Painter*, 653 F.2d 1164, 1170–71 (7th Cir. 1981) (town supervisor who fired three employees for campaigning against her granted only qualified immunity defense; no discussion of whether defendant acted legislatively or whether absolute immunity might apply); *Key v. Rutherford*, 645 F.2d 880, 886 (10th Cir. 1981) (good faith immunity accorded city officials in First Amendment challenge to job termination); *German v. Killeen*, 495 F.Supp. 822, 830–31 (E.D.Mich. 1980). Assuming qualified immunity would apply here for the Council's "legislative" act, the Republican defendants-councilors fail that test. *See* § II *infra*.

b. The enforcement exception. As discussed in note 2 *supra*, *Supreme Court of Virginia v. Consumers Union of United States, Inc.* granted absolute immunity to state judges acting in a legislative capacity. The Court found, however, that the state court and its chief justice could be held officially liable for counsel fees in their enforcement capacities, because the court had inherent and statutory authority to initiate proceedings against attorneys for violations of the Virginia Code of Professional Responsibility. 446 U.S. at 736, 738–39, 100 S.Ct. at 1976–78. Under that theory, defendants would be liable here in their official capacities. Swearing in Falge as the new City Clerk would constitute the Council's enforcement of its earlier decision to replace plaintiff. *See also Fernandes v. Limmer*, 663 F.2d 619, 637 (5th Cir. 1981); Reinstein & Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv.L.Rev. 1113, 1175 (1973).

*Supreme Court of Virginia* contains its own analytical flaws. First, the Court never discussed the scope of the enforcement function within the legislative context. Second, liability

## II.

▉ A finding of a lack of absolute legislative immunity does not end the inquiry into personal liability for counsel fees. The legislative history of section 1988 indicates that proof of bad faith is necessary to render a defendant liable for fees in his individual capacity. Senate Report, *supra*, 1976 U.S.Code Cong. & Ad.News at 5913 n.7 (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). For the following reasons, this Court holds that a failure to meet the requirements of the good faith qualified immunity test generally available to other government officials, and extended to legislators acting in an administrative or

Note 8—Continued

should not flow automatically from a determination that a defendant acted in an enforcement role. The Court seemed to find "enforcement of legislation" a new immunity category, just as school and government officials may be immune. Unlike the latter two areas, however, the *Supreme Court of Virginia* Court failed to consider the applicability of a qualified immunity defense to a defendant acting in an enforcement capacity, or when, if ever, a court may impose personal liability on a legislative enforcement official. For a more extensive critique of the case, *see* Note, *supra*.

c. Individual absolute immunity v. municipal liability. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), denied municipalities any immunity from § 1983 suits, even though city officials might successfully assert a qualified good faith defense. The case did not present for decision, however, the more intellectually challenging question concerning the liability of local governments for acts by officials shielded by absolute immunity. While the two social goals seem to conflict most directly here, at least two Circuits have extended *Owen* to cases involving absolute immunity. *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1195–97 (5th Cir. 1981); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 613 (8th Cir. 1980). *See also* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 242 n.13 (Supp.1981) ("It is probable ... that the [*Owen*] Court intended its holding to mean that both qualified and absolute immunities are to be deemed relevant to municipal liability under § 1983."). Under those cases and commentary, the city must pay plaintiff's counsel fees even if the Common Council acted legislatively in refusing to rehire Visser. The Council's act represented the local government's official "policy or cus-

executive capacity,[9] satisfies *Alyeska*'s bad faith standard.

A. *Alyeska* itself contains no discussion of "bad faith," merely referring the reader to *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). *Alyeska*, 421 U.S. at 258–59, 95 S.Ct. at 1622. *Vaughan* allowed an award of counsel fees against defendants who, because of their "callous[ness]" and "recalcitrance," forced plaintiff "to hire a lawyer and go to court to get what was plainly owed him." 369 U.S. at 530–31, 82 S.Ct. at 999. The *Vaughan* Court, however, failed to define bad faith beyond the facts of the case.[10] *See also Lamb v. Sallee*, 417 F.Supp. 282, 288 (E.D.Ky.1976) (defining bad faith as " 'unreasonable, obdurate obstinancy' " (quoting

tom" sufficient to impose liability. *See Owen*, 445 U.S. at 657, 100 S.Ct. at 1419 (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)). Nor would the city's absence as a named party relieve it from liability in those circumstances. *Hutto v. Finney*, 437 U.S. 678, 699–700, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978).

These issues and the welter of conflicting case law suggest the need for a new analytical approach for determining liability and immunity for official misconduct. Schuck, *supra*, at 345–67, presents one possible model; Congress and the courts should consider others as well.

**9.** *Cf. Davis v. Passman*, 544 F.2d 865, 881 (5th Cir. 1977), *rev'd on other grounds*, 571 F.2d 793 (5th Cir. 1978) (*en banc*), *rev'd*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Benford v. American Broadcasting Companies*, 502 F.Supp. 1148, 1158–59 (D.Md.1980) (both cases applying qualified immunity to legislators). Both decisions, however, discussed the defense only in the context of liability for damages.

**10.** While *Vaughan* was an admiralty case, its holding has not been limited to that area. *See, e.g., F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 n.17, 94 S.Ct. 2157, 2165 n.17, 40 L.Ed.2d 703 (1974) (Miller Act); *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973) (Labor-Management Reporting and Disclosure Act).

For a similar general definition of bad faith, *see Doe v. Poelker*, 515 F.2d 541, 547 (8th Cir. 1975) (defendants displayed "a wanton, callous disregard for the constitutional rights" of plaintiffs), *appeal following remand*, 527 F.2d 605 (8th Cir. 1976), *rev'd on other grounds*, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977).

*Monroe v. Bd. of Comm'rs*, 453 F.2d 259, 263 (6th Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2045, 32 L.Ed.2d 333 (1972), and citing *Monroe* for the proposition that "one factor to be considered under this standard is the state of the law as it existed at the time of the acts complained of.").

B. Until *Harlow v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the qualified immunity test contained two elements—an objective and a subjective prong. *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975). *Harlow* reaffirmed *Wood*'s objective prong, but eliminated the subjective element. Under *Harlow*, a government official is liable if his "conduct ... violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." —— U.S. at ——, 102 S.Ct. at 2738, 73 L.Ed.2d at 410 (citing, *inter alia, Wood*). Under *Wood*'s objective prong, the official is also deemed to know settled law. 420 U.S. at 321–22, 95 S.Ct. at 1000–01. That duty resonates with *Vaughan*'s concept that counsel fees are proper

when a plaintiff must go to court to get what is plainly his, 369 U.S. at 531, 82 S.Ct. at 999, and with *Monroe*'s consideration of the "state of the law." 453 F.2d at 263.

The *Wood* Court concluded that if a defendant failed its test, "his action cannot reasonably be characterized as being in good faith." *Id.*[11] The similarity between *Harlow, Wood* and *Vaughan* justifies the conclusion that defendants failing the qualified immunity test may have attorneys' fees imposed on them personally.[12]

As a matter of law, the Republican councilors fail the official immunity defense. The law is clear on the issue of patronage employment practices. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), both forbade political firings for partisan reasons. Nor were the councilors unaware of the law. In January, 1981, Corporation Counsel David Garber explicitly warned the councilors against ousting Visser solely on the basis of his political affiliations, saying that such action would contravene Supreme

---

11. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980), clearly requires a defendant to plead a defense of qualified immunity, as defendants-councilors have done here.

While *Gomez* did not decide whether a defendant carries the burden of persuasion to prove both elements of the test, *cf. id.* at 642, 100 S.Ct. at 1924 (Rehnquist, J., concurring), this Court adopts the position of the Fourth Circuit and a leading commentator that defendants-councilors carry that burden. *Logan v. Shealey*, 660 F.2d 1007, 1014 (4th Cir. 1981); S. Nahmod, Civil Rights and Civil Liberties Litigation 230, 259 (1979).

12. *See also Universal Amusement Co. v. Vance*, 559 F.2d 1286, 1301 (5th Cir. 1977), *cert. denied sub nom. Butler v. Dexter*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 296 (1979) (an award of counsel fees is proper only after respecting qualified good faith immunity).

In *Class v. Norton*, 505 F.2d 123, 127 (2d Cir. 1974), the Second Circuit measured personal liability for counsel fees by the qualified immunity test, but added that

[w]here the defendant is insulated from liability by a qualified executive immunity of the scope witnessed here, however, "bad faith" alone in the sense used here as illuminated by the facts found would not appear to

be enough. In the absence of malice or a clear abuse of discretion, this punitive award does not lie against [the official].

(Citations omitted).

The case is distinguishable, however, both because the court limited its analysis of bad faith to the facts, and because it relied on *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), a pre-*Wood* case. The *Scheuer* Court refused to provide a "definitive exploration" of the scope of a qualified immunity defense, stating only that "[i]t is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity." *Id.* at 247–48, 249, 94 S.Ct. at 1692, 1693. More importantly, "*Wood*'s duty to know settled rights *supplements* the earlier and more general objective part of the qualified immunity test." S. Nahmod, *supra* note 11, at 234 (emphasis in original). That addition brought that test and the bad faith standard of *Vaughan* into closer accord than had been the case under *Scheuer. Harlow v. Fitzgerald*, —— U.S. ——, , 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), reaffirms the importance of determining whether clearly established rights are involved.

Court precedent and could open the councilors to personal liability in a lawsuit.[13]

Nor is the law murky in failure to reappoint cases. Judge McCurn squarely held in Syracuse last summer that failure to reappoint solely for political reasons stands on a constitutional par with patronage dismissal practices. *Brady v. Paterson*, 515 F.Supp. 695, 699 (N.D.N.Y.1981). Judge McCurn did not decide *Brady* on a *tabula rasa*. He reviewed earlier cases on the issue in coming to his conclusion.[14] Whether or not defendants read *Brady*, ignorance of the law is no excuse.[15] This breach of the duty to know clearly established law in itself constitutes a failure to prove reasonable good faith, as does actual violation of that law.[16]

Only the Republican councilors are personally liable for plaintiff's counsel fees, because only they voted to remove Visser. In January, 1981, the first time Visser's position was threatened, Democratic councilor Nowakowski echoed Corporation Counsel Garber's advice that dismissing Visser could open councilors to personal liability,

adding "I don't want to get involved in a lawsuit."[17] While no evidence was introduced explicitly explaining Democratic councilors' votes against Republican Falge in the election for a new City Clerk, those remarks of a year earlier provide circumstantial evidence of their reasons.[18] Nor is any explanation needed. Simply by voting no to Falge, Democratic councilors avoided violating plaintiff's constitutional rights.

### III.

The actual calculation of counsel fees is simple. Defendants do not challenge any specific portion of the request for attorneys' fees and expenses. In his affidavit, plaintiff's counsel shows 67 hours devoted to this case. His fee of $75 an hour represents the hourly rate in this area normally charged for similar work by attorneys of like skill. Thus, the "lodestar" figure comes to $5,025. *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 (2d Cir. 1980).

Of the total hours submitted, plaintiff's counsel spent 22.6 hours preparing this motion. Under precedent of this Circuit, those

13. Plaintiff's Exh. 3, proceedings of the Common Council for the City of Syracuse For the Fiscal Year 1981, at 4–5. The Corporation Counsel rendered his opinion on the legality of the motion to replace plaintiff under the authority of §§ 5–1101(2) and 5–1101(4) of the Charter, *supra* note 5.

14. See *Visser*, 530 F.Supp. at 1168, for additional case law support.

15. *Cf. Williams v. Treen*, 671 F.2d 892, 899–900 (5th Cir. 1982).

16. *Harlow v. Fitzgerald*, —— U.S. ——, ——, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."); S. Nahmod, *supra* note 11, at 234; *see Nekolny v. Painter*, 653 F.2d 1164, 1171 (7th Cir. 1981); *accord, Williams v. Treen*, 671 F.2d 892, 899–900 (5th Cir. 1982) (violation of clearly established state law vitiates objective prong of good faith immunity defense).

Contrary to defendants' assertions, this Court did not issue its temporary restraining order to protect councilors from liability for their actions. Except in declaratory judgment actions, this Court has no inherent power to grant constitutional absolution on abstract

acts. Nor did the temporary restraining order require a vote. Defendants-councilors were free, based on the discussion at the January 2, 1982 meeting or on principles of settled law, to decide not to violate plaintiff's constitutional rights. Indeed, four defendants-councilors did vote against Falge's election. Rather, the temporary restraining order issued here, allowing a vote but enjoining a new City Clerk from being installed, served two purposes. First, it maintained the status quo. Second, it allowed a resolution of plaintiff's claim to be based on concrete facts, not speculation. An injunction against the vote would in effect have prejudged the outcome, pretermitting consideration of whether the Common Council would have voted to replace Visser in the first place, or, if so, whether valid reasons existed for the majority's decision. *Cf. Farkas v. Thornburgh*, 493 F.Supp. 1168, 1173–74 (E.D.Pa.1980) (dismissal for legitimate political reasons will stand, even if coupled with constitutionally flawed reasons), *aff'd mem.*, 633 F.2d 209 (3d Cir. 1980) (table).

17. Plaintiff's Exh. 3, *supra* note 14, at 5.

18. *See Visser*, 530 F.Supp. at 1169 n.18 (events of January 1981 held relevant to plaintiff's cause of action).

hours are not to be considered. · *Boe v. Colello*, 447 F.Supp. 607, 610 (S.D.N.Y.1978); *cf. City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1102 (2d Cir. 1977). The Court sees no reason to adjust the lodestar figure in any other way. Plaintiff's counsel represented his client quite competently,[19] but the case presented no particularly difficult or novel issues. This Court recently awarded counsel fees of a similar amount in a patronage dismissal case. *Layden v. Costello*, No. 80–CV–300 (HGM) (N.D.N.Y., June 9, 1982) (award of $6,742.73 granted). *See generally Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974) (discussing criteria in determining size of counsel fees award). Nor does any reason exist to upset plaintiff's counsel's determination of costs, amounting to $251.82. Accordingly, the five Republican councilors, defendants DeFrancisco, Ludovico, Mahoney, Tormey and Walsh, are jointly and severally liable in their personal capacities to plaintiff for attorneys' fees and costs totalling $3,581.82. Pursuant to Fed.R. Civ.P. 58 and Local Rule 25, the Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

**19.** So, too, the Corporation Counsel vigorously and competently represented defendants-coun-    cilors.